IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARMEN SANTUCCI,<br><br>   *Plaintiff,*<br><br> v.<br><br>BOROUGH OF UPLAND, et al.,<br><br>   *Defendants.* | CIVIL ACTION<br>NO. 25-5172 |

**Pappert, J.**                                        **October 28, 2025**

## MEMORANDUM

  Carmen Santucci sued the Borough of Upland and four local officials under 42 U.S.C. § 1983 for allegedly violating his constitutional rights. The Borough and the officials move to dismiss Santucci's Complaint and the Court grants the motions. Santucci may amend some of his claims consistent with this Memorandum.

### I

  The Borough prohibits individuals from parking "motor vehicles" on "unpaved" land "in connection with a residential . . . establishment." Upland, Pa. Code ch. 134, § 1 (1969); *see also* (Compl. ¶ 14, Dkt. No. 1). A person who violates this ordinance commits a non-traffic "[s]ummary" offense. (Compl. ¶¶ 18, 43.)

  In Pennsylvania, "magisterial district judges" have jurisdiction over "[s]ummary" offenses. 42 Stat. and Cons. Stat. Ann. § 1515(a)(1). A proceeding for such an offense must be brought (1) in "the magisterial district in which the offense is alleged to have occurred" or (2) before a district judge "on temporary assignment to serve such magisterial district." Pa. R. Crim. P. 130(A). A judge "of any magisterial district" may be temporarily assigned by his supervising judge "to serve another magisterial district

whenever such assignment is needed" for "the efficient administration of justice." *Id.* 132(A)(4). A judge on temporary assignment has the "same jurisdiction and authority" as those judges within the district to which he is assigned. *Id.* 133(A).

Santucci lives in the Borough. (Compl. ¶ 11.) Over the past few years, Richard Slifer—a code enforcement officer—filed nine citations against Santucci for parking his car on unpaved land at his home in violation of the ordinance. *See* (*id.* ¶¶ 6, 20). Slifer brought seven of the citations in Pennsylvania magisterial district 32-2-39 before Judge Georgia Stone. (*Id.* ¶ 21.) This is the district in which Santucci allegedly violated the ordinance. (*Id.*) Stone thus had "proper" jurisdiction over the citations. (*Id.* ¶ 104.) Stone transferred six of the citations to Judge Andrew Goldberg, who sits in Pennsylvania magisterial district 32-2-46. (*Id.* ¶ 22.) Goldberg had been temporarily assigned by his supervising judge to serve Stone's district. *See* (President Judge Administrative Order at 1–2, Dkt. No. 22-2) (order of Goldberg's supervising judge assigning him to "act in Magisterial District[]" "32-2-39" "for the efficient administration of justice").[1] Because Pennsylvania law authorized Goldberg to exercise the "same jurisdiction and authority" as Stone, Pa. R. Crim. P. 133(A), he could hear cases involving Santucci's alleged violations of the parking ordinance. Slifer brought the two remaining citations in magisterial district 32-2-46 before Goldberg. (Compl. ¶ 23.) In sum, eight of the nine citations filed against Santucci "were processed by" Goldberg "through District Court 32-2-46." (*Id.* ¶ 24.)

---

[1] In judging the sufficiency of a complaint, the Court may generally review only the allegations in the complaint itself. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Yet the Court may also consider an authentic "document" that is "*integral to*" the complaint. *Id.* (internal quotation marks and citation omitted). Here, the order by Goldberg's supervising judge authorizing Goldberg to hear cases in Stone's district is an authentic document integral to Santucci's Complaint. Several of Santucci's claims rest on the premise that Goldberg lacked jurisdiction over his citations.

Santucci was found guilty and fined in at least some of these cases. In one, for example, after Santucci failed to appear for trial, Stone found him guilty and fined him. *See* Docket Sheet at 1–2, Commonwealth of Pennsylvania v. Santucci, Dkt. No. MJ-32239-NT-0000330-2021.[2] In another case, Santucci again failed to appear, prompting Goldberg to find him guilty and fine him. *See* Docket Sheet at 1–2, Commonwealth of Pennsylvania v. Santucci, Dkt. No. MJ-32246-NT-0000239-2021. In total, Santucci racked up $2,733.15 in fines. (Compl. ¶ 92.)

To enforce payment, Goldberg issued multiple warrants for Santucci's arrest. (*Id.* ¶ 48.) Goldberg informed Santucci that if he did not pay, he could be arrested, or his car could be seized. (*Id.* ¶¶ 93–94.) Walter Omlor, the local constable, executed the warrants. (*Id.* ¶¶ 10, 73.) He went to Santucci's home, "banged" on his door, "looked" inside his windows and "verbally called out for" him. (*Id.* ¶ 74.) After he found Santucci, Omlor threatened to arrest him and tow his car. (*Id.* ¶¶ 75–76.) Omlor finally "coerced" Santucci to "send money to District Court 32-2-46." (*Id.* ¶ 77.)

## II

The Court assesses the sufficiency of a pleading before discovery under Federal Civil Rules 8 and 12. Rule 8(a)(2) provides that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And Rule 12(b)(6) permits a district court to dismiss a complaint that fails "to state a claim upon which relief can be granted." *Id.* 12(b)(6). Taken together, the two rules require the plaintiff to allege sufficient "facts to state a claim to relief that

---

[2] The Court may consider Pennsylvania court dockets containing information about Santucci's citations because they are "matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The first step in determining whether a plaintiff has stated a plausible claim is to "tak[e] note of the elements" underlying his claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009); *Santiago v. Warminster Township*, 629 F.3d 121, 129–30 (3d Cir. 2010). The second step is to examine the plaintiff's complaint and determine whether the factual allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Plausibility requires the plaintiff to plead sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The reasonableness of an inference depends on common sense and the strength of competing explanations for the defendant's conduct. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016); *Iqbal*, 556 U.S. at 682. Plaintiffs do not meet the plausibility burden when the facts alleged are "merely consistent with a defendant's liability" or show nothing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quotation marks and citation omitted). In gauging the plausibility of a claim, the Court must accept as true all well-pleaded factual allegations, construe those facts in the light most favorable to the plaintiff, and draw reasonable inferences from them. *Connelly*, 809 F.3d at 786 n.2. Because Santucci is proceeding *pro se*, the Court construes his complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

### III

### A

Santucci brings eight claims against Stone, Goldberg, Slifer and Omlor. He first alleges procedural due process violations. (Compl. ¶¶ 102–05.) No State may "deprive any person of life, liberty, or property" without "due process of law." U.S. Const.

amend. XIV, § 1.  To state a procedural due process claim, Santucci must allege that the defendants deprived him of a "life, liberty, or property" interest and that they did so without "due process of law"—without according him the procedural protections the Federal Constitution requires.  *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006).

Santucci claims Stone improperly transferred "cases from proper to improper jurisdiction," while Goldberg issued arrest warrants without "authority," *i.e.*, jurisdiction. (Compl. ¶¶ 104, 130.)  Judicial immunity bars these claims.  Judges have broad immunity from suit.  *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam).  This rule has "only two" exceptions.  *Id.* at 11.  Judges lack immunity for liability arising from non-judicial acts.  *Id.*  And they lose immunity when they act "in the complete absence of all jurisdiction."  *Id.* at 12.  Neither exception applies.

Stone performed a judicial act when she transferred Santucci's cases to Goldberg.  An act is judicial if it is "normally performed by a judge."  *Gallas v. Sup. Ct. of Pa.*, 211 F.3d 760, 768–69 (3d Cir. 2000) (internal quotation marks and citation omitted).  Judges, for venue, administrative or other reasons, transfer cases.  Goldberg similarly performed a judicial act when he issued warrants for Santucci's arrest.  *See, e.g., Norfleet v. Renner*, 924 F.3d 317, 320 (6th Cir. 2019) ("Issuing an arrest warrant is a judicial act.").

The judges did not act in the complete absence of jurisdiction.  Stone, as Santucci concedes, had "proper" jurisdiction over his cases because he allegedly violated the parking ordinance in her district. (Compl. ¶ 104); *see also* (*id.* ¶¶ 21, 23).  Goldberg also had jurisdiction to hear Santucci's cases.  A judge "of any magisterial district" may be

temporarily assigned by his supervising judge "to serve another magisterial district." Pa. R. Crim. P. 132(A)(4). And a judge on temporary assignment exercises the "same jurisdiction" as those judges within the district to which he is assigned. *See id.* 133(A). Here, Goldberg was on temporary assignment to serve Stone's district. (President Judge Administrative Order at 1–2.) That means he had the "same jurisdiction" as Stone. Pa. R. Crim. P. 133(A). Because Stone had jurisdiction over Santucci's cases, so too did Goldberg. Judicial immunity shields Stone and Goldberg from suit.

The Court interprets Santucci's claims against Slifer to include that Slifer deprived Santucci of property in the form of money by bringing criminal proceedings against him—which resulted in Santucci being coerced to pay fines to the Borough. Santucci, however, does not allege sufficient facts to support the second procedural due process element: Slifer deprived him of money without "due process of law." *Hill*, 455 F.3d at 233–34.

Santucci first claims Slifer "[d]eliberately" filed "enforcement actions in courts lacking proper jurisdiction." (Compl. ¶ 104.) He did not. Slifer filed seven of the nine citations in magisterial district 32-2-39 before Stone. (*Id.* ¶ 21.) Stone had "proper" jurisdiction. (*Id.* ¶ 104.) Slifer filed the other two citations in magisterial district 32-2-46 before Goldberg. (*Id.* ¶ 23.) And Goldberg had jurisdiction because he had been assigned to serve Stone's district.

Santucci next claims Slifer "document[ed] fictitious arrests." (*Id.* ¶ 104.) He alleges that Slifer appeared as the "Arresting Officer" on some of his state court "docket sheets" even though Slifer never arrested him. (*Id.* ¶¶ 44–45.) The Court fails to

understand how this allegation supports the claim that Slifer deprived Santucci of money without "due process of law."

Santucci then suggests Slifer violated his procedural due process rights because he caused him to suffer "humiliation and damage to reputation from being subjected to multiple invalid arrest warrants." (*Id.* ¶ 160.) But Santucci does not have a life, liberty or property interest in being free from "humiliation" and "damage to reputation." *Paul v. Davis*, 424 U.S. 693, 711–12 (1976).

With respect to Santucci's claims against Omlor, assuming Omlor deprived Santucci of a property interest in the form of money, Santucci fails to allege sufficient facts to show he did so without "due process of law." Santucci says Omlor threatened to arrest him and seize his car based on "invalid legal proceedings." (Compl. ¶ 104.) In support of this argument, he contends Goldberg lacked jurisdiction to issue warrants to Omlor. (*Id.* ¶ 72.) But again, Goldberg had jurisdiction.

Santucci, lastly, argues he did not receive notice of the legal proceedings against him. (*Id.* ¶ 104.) Before a state or local government may deprive an individual of money, due process requires it to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Notice mailed to a person's home generally satisfies due process. *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983); *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Santucci alleges the judges (Stone and Goldberg) sent him summonses "by first class mail" to appear in court. (Compl. ¶ 54.) And he alleges *no* facts to suggest that in so doing the government failed to adequately

put him on notice. For example, he does not indicate that the government knew something went "awry" with the mail's delivery. *Jones*, 547 U.S. at 226 (internal quotation marks and citation omitted).

B

Santucci next asserts substantive due process claims against Slifer and Omlor. (Compl. ¶¶ 106–08.) Substantive due process is a "component" of the Fourteenth Amendment that "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (internal quotation marks and citation omitted).

Santucci first claims Slifer and Omlor "terror[ized]" him. (Compl. ¶ 108.) Abuse of executive power may violate substantive due process in rare circumstances. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). To state a claim for abusive executive action, Santucci must allege "conscience-shocking" conduct. *Id.* at 849. The "behavior" of the "governmental officer" must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 847 n.8. Santucci says Slifer and Omlor subjected him to a "four year long pattern of terror, harassment, intimidation, extortion, and abuse of [the] legal process." (Compl. ¶ 108.) These allegations, however, are too vague and conclusory to plausibly show that Slifer and Omlor engaged in "egregious" and "outrageous" conduct. *Lewis*, 523 U.S. at 847 n.8. Santucci's allegations boil down to contending that Slifer filed citations against him for violating the parking ordinance and that Omlor went to his home and threatened to arrest him and tow his car. Offensive though these incidents may have seemed to Santucci, they do not paint a picture of a terror campaign teeming with conscience-shocking conduct.

8

*See, e.g.*, *Miller v. City of Philadelphia*, 174 F.3d 368, 377 (3d Cir. 1999) (dismissing a substantive due process claim for abusive executive action because the plaintiff's allegations did not plausibly show that the defendant acted "in a way that shock[ed] the conscience").

Santucci next claims Slifer and Omlor interfered with his "constitutional[] . . . right [to] park[] his personal vehicle within the confines of his own private property." (Compl. ¶ 50.)  Santucci apparently believes that he has a "fundamental constitutional right" to park his car on his unpaved land and that the defendants violated this right. (*Id.* ¶ 107.)  To prevail on this sort of substantive due process claim, Santucci must show that the alleged right is deeply rooted in our Nation's history and tradition. *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997).  He does not point to any legal authority for the proposition that he has a fundamental right to park his car on his property free from government regulation. *See, e.g.*, *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 286 (3d Cir. 2004).

C

Santucci next asserts Fourth Amendment claims against Omlor.  (Compl. ¶¶ 109–11.)  In relevant part, the Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.

Santucci first claims Omlor searched for him on his property without a valid warrant.  (Compl. ¶¶ 72, 111.)  Before entering private property to conduct a search, officers ordinarily must obtain a warrant. *Caniglia v. Strom*, 141 S. Ct. 1596, 1599 (2021).  Omlor had a warrant to arrest Santucci, *see* (Arrest Warrants for Carmen

9

Santucci at 1–10, Dkt. No. 21-5),[3] so he could go onto Santucci's property to find him. *Collins v. Virginia*, 138 S. Ct. 1663, 1670 (2018); *see also Payton v. New York*, 445 U.S. 573, 603 (1980) (holding that an arrest warrant is sufficient to authorize officers to enter a person's property). Santucci protests that Omlor had a "jurisdictionally void" warrant because Goldberg did not have the authority to issue it. (Compl. ¶ 72.) But again, Goldberg had jurisdiction.

Santucci next claims Omlor (1) threatened to seize his vehicle, (2) threatened to arrest him, (3) demanded he pay money to the Borough and (4) harassed and intimidated him. (*Id.* ¶¶ 109–111.) Even if these allegations sufficed to show that Omlor "seized" Santucci within the meaning of the Fourth Amendment, Santucci fails to allege sufficient facts to show that the seizure was "unreasonable." A "seizure is usually reasonable when it is carried out with a warrant." *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006). Here, Omlor had a warrant to arrest Santucci, so he could seize Santucci. *Id.* True, "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes" interests "protected by the Fourth Amendment[]." *United States v. Jacobsen*, 466 U.S. 109, 124 (1984). But Santucci doesn't allege facts to show that Omlor unreasonably executed the arrest warrant.

D

Santucci next asserts equal protection claims against Stone and Slifer. (Compl. ¶¶ 112–15.) No State, the Fourteenth Amendment says, "shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

---

[3] The Court may consider the arrest warrants for Santucci because they are integral to his complaint. *Schmidt*, 770 F.3d at 249.

This language prohibits the "selective enforcement" of laws. *PG Publ'g Co. v. Aichele*, 705 F.3d 91, 115 (3d Cir. 2013). To state a claim for selective enforcement, Santucci must allege (1) he was treated differently from similarly situated individuals and (2) this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor. *Jewish Home of E. Pa. v. Ctrs. for Medicare and Medicaid Servs.*, 693 F.3d 359, 363 (3d Cir. 2012).

Santucci first claims Stone "selectively enforced" the ordinance "by deliberately" transferring his cases "to the improper venue of District Court 32-2-46." (Compl. ¶ 113.) Judicial immunity bars this claim. As explained, Stone performed a judicial act when she transferred Santucci's cases to Goldberg. Plus, she did not act in the complete absence of jurisdiction.

Santucci fails to state a claim against Slifer because he does not allege sufficient facts to support either of the selective enforcement elements. First, he fails to indicate Slifer treated him differently from others similarly situated. Santucci alleges Slifer "singled" him "out" by "treating him differently than others similarly situated." (Compl. ¶ 115.) The Court, however, need not accept as true this conclusory assertion if the Complaint does not support it with enough alleged facts to plausibly suggest that Slifer, in fact, treated him differently from others similarly situated. *Iqbal*, 556 U.S. at 678. The Complaint does not do so. Santucci fails to allege *any* facts supporting that he was treated differently from individuals who are "alike" to him "in all relevant respects." *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (internal quotation marks and citation omitted).

Santucci also fails to allege sufficient facts to indicate that Slifer treated him differently based on an "unjustifiable standard" such as race. In fact, he alleges *no* facts that could possibly satisfy this element.

E

Santucci next claims Stone, Goldberg, Slifer and Omlor conspired to violate his federal constitutional rights. (Compl. ¶¶ 116–19.) To state a claim for conspiracy, Santucci must allege (1) two or more persons agreed to deprive him of a constitutional right, (2) one or more of the conspirators performed an overt act to further the conspiracy, and (3) the overt act deprived the plaintiff of a right. *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018).

Santucci fails to allege facts to satisfy the first element. To establish an agreement, Santucci must demonstrate the defendants "reached an understanding." *Id.* at 295 (internal quotation marks and citation omitted). Santucci first says the defendants "conspired and agreed" to deprive him of his "constitutional rights" and that this "conspiracy involved both magistrates, the code enforcement officer, and the constable working in concert to systematically deprive the Plaintiff of due process and equal protection." (Compl. ¶¶ 117–18.) But these allegations are conclusory, failing to state a claim for relief. *Iqbal*, 556 U.S. at 678.

Santucci also argues the defendants engaged in "coordinated" activity: Slifer filed some citations in a district lacking jurisdiction; Stone improperly transferred some cases to Goldberg; Goldberg issued warrants without jurisdiction; and Omlor harassed Santucci based on an invalid warrant. (Compl. ¶ 117.) But even if true, none of these allegations indicate the defendants *agreed* to deprive Santucci of a constitutional right.

F

Santucci next claims the Borough is liable for the "constitutional violations" he suffered. (Compl. ¶¶ 120–22.) To subject the Borough to liability under § 1983, Santucci must allege that he suffered a constitutional injury stemming from the Borough's customs, policies, or practices. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). The Court need not examine the customs, policies, or practices of the Borough if no constitutional violation occurred. *Whaley v. Wattlington*, No. 23-1344, 2023 WL 8026394, at *2 (E.D. Pa. Nov. 17, 2023). This rule dooms Santucci's *Monell* claim: For the reasons explained, Santucci fails to allege a constitutional violation.

G

Santucci next claims the Borough's parking ordinance is unconstitutionally vague. (Compl. ¶¶ 123–26.) A state law violates due process principles "if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (citation modified and omitted). A law is impermissibly vague if it "does not allow a person of ordinary intelligence to determine what conduct it prohibits, or if it authorizes arbitrary enforcement." *J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*, 650 F.3d 915, 935 (3d Cir. 2011) (en banc).

The ordinance is clear. Individuals may not park cars on "unpaved" land "in connection with a residential establishment." (Compl. ¶ 14.) Santucci first argues that the ordinance does not define the phrase "residential establishment." (*Id.* ¶ 125.) But a law is not vague simply because it does not define every word in it. The phrase "residential establishment" means a premises used for living. *Cf. Borough of Walnutport v. Dennis*, No. 1803 C.D. 2014, 2015 WL 5453316, at *7 (Pa. Commw. Ct.

July 10, 2015) (defining "residential establishment" in a different context as a premises used primarily for dwelling).

Santucci next says the ordinance "fails to provide the legal basis on how private properties become subject to the Borough parking ordinance." (Compl. ¶ 125.) He appears to argue that the ordinance does not tell law enforcement how to determine whether a property is a "residential establishment." But this kind of argument would render every law vague. Law enforcement officials enforce laws by making judgment calls about whether a law applies to particular conduct.

## H

Lastly, Santucci claims Stone, Goldberg and Slifer retaliated against him in violation of the First Amendment. (Compl. ¶ 136.) To state a claim for retaliation, Santucci must show (1) he engaged in protected conduct, (2) the defendants took an adverse action against him, and (3) a causal connection exists between the two. *Karns v. Shanahan*, 879 F.3d 504, 522 (3d Cir. 2018).

Judicial immunity bars the claims against Stone and Goldberg. Santucci claims Stone improperly transferred his cases to Goldberg after he filed a judicial complaint against her with Pennsylvania's Judicial Conduct Board. (Compl. ¶¶ 85, 136.) And he similarly accuses Goldberg of issuing warrants after he filed a judicial complaint against him with Pennsylvania's Judicial Conduct Board. (*Id.* ¶¶ 89, 136.) Because Stone and Goldberg have judicial immunity for transferring cases and issuing warrants, Santucci does not state retaliation claims against them.

Santucci fails to state a claim against Slifer because he does not allege sufficient facts to support the causation element. He argues that Slifer filed several citations

14

against him after he complained about Slifer's conduct to the Delaware County District Attorney's Office. (*Id.* ¶¶ 81–84, 136.) Even if Santucci engaged in protected conduct and Slifer took an adverse action against him, Santucci fails to allege sufficient facts to show a causal connection between the two. To establish causation, Santucci must show one of four things: (1) a temporal proximity between the protected activity and adverse action that is unusually suggestive of retaliatory motive, (2) a pattern of antagonism towards him after he engaged in his protected activity, (3) inconsistencies in the official's explanations for the adverse action, or (4) other facts from which the Court could infer causation. *See Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 260 (3d Cir. 2017).

Santucci fails to plead sufficient facts to support any theory of causation. He does not allege the specific temporal proximity between his complaint and the decision by Slifer to file citations against him. He does not plead facts showing that Slifer engaged in a pattern of antagonism after his complaint. He shows no inconsistent explanations by Slifer for the decision to cite him. And he pleads no other allegations from which the Court could infer causation. In fact, Santucci's allegations support a commonsense explanation unrelated to retaliation for Slifer's enforcement actions: Santucci was violating the Borough's parking ordinance.

## IV

A court should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); *USX Corp. v. Barnhart*, 395 F.3d 161, 166 (3d Cir. 2004). If a "civil-rights complaint fails to state a claim," a court "must grant leave to amend the complaint unless amendment would be futile or inequitable." *Vorchheimer v. Phila.*

*Owners Ass'n*, 903 F.3d 100, 113 (3d Cir. 2018). It would be futile for Santucci to amend (1) his claims against the judges and (2) his claims premised on the argument that the judges lacked jurisdiction to hear his cases. Santucci can allege *no* facts which could cure these claims. *See U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 517 (3d Cir. 2007) (explaining that amendment is futile when the "legal inadequacy" of claims "cannot be solved by providing a better factual account"). For all other claims, amendment would not be futile. Nor would amendment for these claims be inequitable or unfairly prejudice the defendants. Santucci may amend his Complaint, consistent with the accompanying Order.

    An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
Gerald J. Pappert, J.
