IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARMEN SANTUCCI,<br><br>       *Plaintiff,*<br><br>v.<br><br>BOROUGH OF UPLAND, et al.,<br><br>       *Defendants.* | CIVIL ACTION<br>NO. 25-5172 |

**Pappert, J.**                                                                                                 January 5, 2026

## MEMORANDUM

       Carmen Santucci sued the Borough of Upland and four local officials for allegedly violating his constitutional rights. The Court dismissed his Complaint but allowed him to amend some of his claims. Rather than amend, Santucci moved for reconsideration. The Court denies his motion because he fails to show a clear error of law or submit new evidence.

I

       Santucci's Complaint states the Borough prohibits individuals from parking "motor vehicles" on "unpaved" land "in connection with a residential . . . establishment." *See* (Compl. ¶ 14, Dkt. No. 1); Upland, Pa. Code ch. 134, § 1 (1969); *Santucci v. Borough of Upland*, No. 25-5172, 2025 WL 3016519, at *1–2 (E.D. Pa. Oct. 28, 2025). A person who violates this ordinance commits a non-traffic "[s]ummary" offense. (Compl. ¶¶ 18, 43.)

       In Pennsylvania, "magisterial district judges" have jurisdiction over "[s]ummary" offenses. 42 Stat. and Cons. Stat. Ann. § 1515(a)(1). A proceeding for such an offense must be brought (1) in "the magisterial district in which the offense is alleged to have

occurred" or (2) before a district judge "on temporary assignment to serve such magisterial district." Pa. R. Crim. P. 130(A). A judge "of any magisterial district" may be temporarily assigned by his supervising judge "to serve another magisterial district whenever such assignment is needed" for "the efficient administration of justice." *Id.* 132(A)(4). A judge on temporary assignment has the "same jurisdiction and authority" as those judges within the district to which he is assigned. *Id.* 133(A).

Santucci lives in the Borough. (Compl. ¶ 11.) Over the past few years, Richard Slifer—a code enforcement officer—filed nine citations against Santucci for parking his car on unpaved land at his home in violation of the ordinance. *See* (*id.* ¶¶ 6, 20). Slifer brought seven of the citations in Pennsylvania magisterial district 32-2-39 before Judge Georgia Stone. (*Id.* ¶ 21.) This is the district in which Santucci allegedly violated the ordinance. (*Id.*) Stone thus had "proper" jurisdiction over the citations. (*Id.* ¶ 104.) Stone transferred six of the citations to Judge Andrew Goldberg, who sits in Pennsylvania magisterial district 32-2-46. (*Id.* ¶ 22.) Goldberg had been temporarily assigned by his supervising judge to serve Stone's district. *See* (President Judge Administrative Order at 1–2, Dkt. No. 22-2) (order of Goldberg's supervising judge assigning him to "act in Magisterial District[ ]" "32-2-39" "for the efficient administration of justice"). Because Pennsylvania law authorized Goldberg to exercise the "same jurisdiction and authority" as Stone, Pa. R. Crim. P. 133(A), he could hear cases involving Santucci's alleged violations of the parking ordinance. Slifer brought the two remaining citations in magisterial district 32-2-46 before Goldberg. (Compl. ¶ 23.) In sum, eight of the nine citations filed against Santucci "were processed by" Goldberg "through District Court 32-2-46." (*Id.* ¶ 24.)

Santucci was found guilty and fined in at least some of these cases. *See Santucci*, 2025 WL 3016519, at *2. In total, he accrued $2,733.15 in fines. (Compl. ¶ 92.) To enforce payment, Goldberg issued multiple warrants for Santucci's arrest. (*Id.* ¶ 48.) Walter Omlor, the local constable, executed the warrants. (*Id.* ¶¶ 10, 73.) He went to Santucci's home, "banged" on his door, "looked" inside his windows and "verbally called out for" him. (*Id.* ¶ 74.) After he found Santucci, Omlor threatened to arrest him and tow his car. (*Id.* ¶¶ 75–76.) Omlor finally "coerced" Santucci to "send money to District Court 32-2-46." (*Id.* ¶ 77.)

On the basis of these allegations, Santucci asserted a myriad of purported constitutional claims against the Borough, Stone, Goldberg, Slifer and Omlor. *See Santucci*, 2025 WL 3016519, at *1–8. He premised many of those claims on his argument that Stone and Goldberg lacked jurisdiction to adjudicate his parking offenses. *Id.* The Court rejected this argument, reasoning Stone had jurisdiction over Santucci's cases because he allegedly violated the parking ordinance in her district. *Id.* at *3. Goldberg also had jurisdiction to hear Santucci's cases because he had been temporarily assigned by his supervising judge "to serve [Stone's] magisterial district," Pa. R. Crim. P. 132(A)(4), and a judge on temporary assignment exercises the "same jurisdiction" as those judges within the district to which he is assigned, Pa. R. Crim. P. 133(A); *Santucci*, 2025 WL 3016519, at *3.

II

Santucci invokes Federal Rule of Civil Procedure 59(e), which permits a court to "alter or amend a judgment."[1] To prevail, he must show one of three things: (1) a

---

[1] A judgment is "any order from which an appeal lies." Fed. R. Civ. P. 54(a). Except in a few inapplicable situations, an appeal may only be taken from "final decisions of the district courts." 28

change in the controlling law, (2) the availability of new evidence or (3) a clear error of law or fact. *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

A

Santucci primarily argues the Court committed a clear error of law. He first contends Stone and Goldberg lacked "personal" and "subject matter" jurisdiction to adjudicate his parking offenses because (1) the Borough failed to provide him "notice" of the citations filed against him and (2) the Constitution limits "governmental authority over private property." (Pl.'s Mot. for Reconsideration at 4, Dkt. No. 31.) But Santucci failed to allege sufficient facts to show he didn't have notice of his citations. *Santucci*,

---

U.S.C. § 1291. A final decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Hall v. Hall*, 584 U.S. 59, 64 (2018) (citation omitted). Thus, to qualify as a judgment for purposes of Rule 59(e), an order must "be appealable under 28 U.S.C. § 1291 and have the effect of terminating the litigation." *Jacovetti L., P.C. v. Shelton*, No. 20-cv-00163, 2020 WL 1984883, at *1 (E.D. Pa. Apr. 27, 2020); *United States v. Jackson*, 802 F. App'x 50, 53 (3d Cir. 2020) (explaining "Rule 59(e) motions respond to final decisions by district courts"). On October 28, the Court dismissed Santucci's Complaint but gave him until November 26 to amend some of his claims. (Order, Oct. 28, 2025 at 1–2, Dkt. No. 30.) Generally, a dismissal without prejudice is not a final decision because the plaintiff has the chance to amend. *Doe v. Hesketh*, 828 F.3d 159, 164 (3d Cir. 2016). But such an order can become a final decision if the plaintiff elects clearly to stand on his complaint. *Weber v. McGrogan*, 939 F.3d 232, 240 (3d Cir. 2019). The Court is unsure whether Santucci has elected clearly to do so. True, he failed to amend within the time granted by the Court. *Batoff v. State Farm Ins.*, 977 F.2d 848, 851 n.5 (3d Cir. 1992). But Santucci is proceeding *pro se*, and his briefing seems to suggest that he wants the Court to reconsider its core holding—that Stone and Goldberg had jurisdiction to adjudicate his parking offenses—before he attempts amendment. The Court will err on the side of caution and consider Santucci's motion under its inherent power to reconsider interlocutory orders. *See United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973) (explaining that "so long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so"); *State Nat'l Ins. v. County of Camden*, 824 F.3d 399, 406 (3d Cir. 2016) (explaining a district court has "the inherent power to reconsider prior interlocutory orders"); *see also* Fed. R. Civ. P. 54(b) (explaining "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment"). And in reconsidering its October 28 Order, the Court will rely on the "case law applied to Rule 59(e) motions." *Foster v. Westchester Fire Ins.*, No. 09-1459, 2012 WL 2402895, at *4 n.1 (W.D. Pa. June 26, 2012); *see also Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*, No. 17-cv-00519, 2020 WL 2841517, at *10 (D. Idaho June 1, 2020) (noting district courts that reconsider interlocutory orders under their inherent powers are "guided by substantially the same standards as those used to reconsider final orders pursuant to Rule 59(e)").

2025 WL 3016519, at *4.  And while the Constitution places some limits on the government's authority over private property, *see, e.g.*, U.S. Const. Amend. V, Santucci fails to explain how the Borough's parking ordinance violates any of those limits.

Santucci next offers two reasons why the Administrative Order authorizing Goldberg to serve Stone's district failed to provide Goldberg with "territorial" jurisdiction over his parking offenses.  First, he argues the Administrative Order gave Goldberg jurisdiction only over cases that arose "after-hours, [on] weekends[], and [on] holidays"; and, he says, his parking offenses were filed "during regular business hours." (Pl.'s Mot. for Reconsideration at 5.)  But the Administrative Order authorized Goldberg to serve in Stone's district "*whenever* required for the efficient administration of justice." (President Judge Administrative Order at 1–2) (emphasis added.)  Second, Santucci points out the Administrative Order was issued several years before his cases arose.  (Pl.'s Mot. for Reconsideration at 6.)  But nothing in the Administrative Order states it would cease to have legal effect after a certain period of time.  And Santucci cites no Pennsylvania authority to support his argument that the Administrative Order had to be renewed on a yearly basis.

Santucci also invokes Pennsylvania Rule of Criminal Procedure 132(B), which states that "[w]henever a temporary [judicial] assignment is made under this rule, notice of such assignment shall be filed with the clerk of courts."  According to Santucci, "[n]o evidence exists that notice was filed with the clerk of courts." (Pl.'s Mot. for Reconsideration at 6.)  But Santucci never alleged this in his Complaint.  And he fails to explain how a violation of Rule 132(B) would have deprived Goldberg of jurisdiction over his parking offenses.

5

Equally unavailing is Santucci's reliance on Pennsylvania Rule of Criminal Procedure 130(B), which sets forth rules regarding the transfer of court cases in certain situations. One provision Santucci emphasizes is Rule 130(B)(1)(a)(i), which provides that when "charges arising from a single criminal episode, which occurred in more than one judicial district," are filed "in more than one judicial district, upon the filing with the issuing authority of a written agreement by the attorneys for the Commonwealth, the proceedings shall be transferred to the magisterial district in the judicial district selected by the attorneys for the Commonwealth." This provision, and the others in Rule 130(B), are irrelevant to this case. Santucci's allegations involve the temporary assignment of one judge to serve another's district.

Santucci also incorrectly argues the Court rejected one of his claims on grounds not raised by the defendants. Santucci alleged that the Borough's parking ordinance—which prohibits individuals from parking "motor vehicles" on "unpaved" land "in connection with a residential . . . establishment," Upland, Pa. Code ch. 134, § 1 (1969)—was unconstitutionally vague. The ordinance was vague, he said, because it didn't define "residential establishment." In rejecting this argument, the Court explained that a "law is not vague simply because it does not define every word in it. The phrase 'residential establishment' means a premises used for living. *Cf. Borough of Walnutport v. Dennis*, No. 1803 C.D. 2014, 2015 WL 5453316, at *7 (Pa. Commw. Ct. July 10, 2015) (defining 'residential establishment' in a difference context as a premises used primarily for dwelling)." *Santucci*, 2025 WL 3016519, at *7.

Santucci asserts the Court committed legal error because the Borough neither (1) made the precise argument that a "law is not vague simply because it does not

6

define every word in it" or (2) cited the case *Borough of Walnutport*. (Pl.'s Mot. for Reconsideration at 10.) But the Borough argued the ordinance was clear because the term "residential establishment" means a place where someone lives. (Defs.' Mot. to Dismiss at 18, Dkt. No. 19-1.) The Court agreed with that conclusion and chose to respond to Santucci's specific argument that the ordinance was vague because it didn't define "residential establishment." And courts are not limited to the cases cited in the parties' briefs. It is, after all, the Court's responsibility to "say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).

Santucci next claims he has a fundamental right to use his private property free from government regulation. But the Court rejected this claim and made no clear error of law in doing so. Santucci fails to cite any authority for the proposition that he has a substantive due process right to park his car on his property free from government regulation. *Santucci*, 2025 WL 3016519, at *5.

Santucci next faults the Court for failing to consider the Supreme Court's decision in *Village of Euclid v. Ambler Realty Company*, 272 U.S. 365 (1926). But Santucci did not assert any kind of claim under this case in his Complaint. A court does not commit a clear error of law by failing to address an argument not raised by the plaintiff. *See, e.g.*, *Joyce v. Sea Isle City*, No. 04-5345, 2008 WL 2875456, at *2 (D.N.J. July 23, 2008).

Santucci next claims the Borough has repeatedly denied his requests for Slifer's employment records. But this has nothing to do with whether the Court committed a clear error of law in determining that Santucci's Complaint failed to state plausible claims.

7

B

Santucci also claims new evidence supports his substantive due process claim against the Borough's constable, Omlor—namely, that Omlor abused his executive power by terrorizing him. *Santucci*, 2025 WL 3016519, at *4. Omlor allegedly called Santucci and left him messages telling him that if he did not pay his parking fines, he could end up in jail. (Pl.'s Mot. for Reconsideration at 8.)

The messages left by Omlor do not constitute new evidence under Rule 59(e). New evidence "does not refer to evidence that a party obtains or submits to the court after an adverse ruling" but rather "evidence that a party could not earlier submit to the court because that evidence was not previously available." *Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 252 (3d Cir. 2010). Santucci fails to explain how the messages left on his phone by Omlor were not "previously available."

Even if the Court considered the messages, they do not advance Santucci's substantive due process claim against Omlor. Omlor's threats to Santucci simply do not show egregious or outrageous conduct. "Offensive though these [messages] may have seemed to Santucci, they do not paint a picture of a terror campaign teeming with conscience-shocking conduct." *Santucci*, 2025 WL 3016519, at *4.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.

8